## IN THE UNITED STATES DISTRICT COURT

## DISTRICT OF NEW MEXICO

ROBERT B. RICE and
DEBRA E. RICE,

       Plaintiffs,

v.                                                          No. Civ. 09-01224 LH/WDS

HELEN GOESLING DUNCAN,
RANDY J. WOOD,
MARGARET J. WOOD, and
WILD WEST PROPERTIES, LLC,

       Defendants.

### <u>MEMORANDUM OPINION AND ORDER</u>

    On April 1, 2010, pro se Plaintiffs Robert and Debra Rice ("Plaintiffs") filed their "Motion to Strike Portions of Answers and, in the Alternative, Plaintiffs' Request that the Court Consider Striking Portions of Answers on its Own" (Doc. 18).  On May 21, 2010, Defendant Margaret Wood filed her Motion to Dismiss Claims Against Defendant Margaret Wood (Doc. 38).  The Court, having considered the motions, memoranda, responsive briefs, pleadings, and applicable law, concludes that Plaintiffs' motion should be denied and Defendant Margaret Wood's motion should be granted.

## I.    BACKGROUND[1]

    The "Hay Vega," a large swath of rural land at the heart of this action, is located in Catron County, New Mexico.  (*See* Compl. ¶¶ 11, 29-30, 58.)  Defendant Helen Duncan owned the Hay Vega since 1984.  (*Id.* ¶ 13.)  In November 2008, Defendant Wild West Properties, LLC ("WWP")

---

[1]The following facts are taken from Plaintiffs' Complaint and are assumed true for the purposes of these motions.

and its qualifying broker, Defendant Randy Wood, advertised the Hay Vega as being for sale on WWP's website.  (*See id.* ¶ 14-15.)  At all relevant times, Mr. Wood and WWP were acting as Ms. Duncan's authorized agents.  (*Id.* ¶ 20.)  According to WWP's website, the Hay Vega had an existing well that was "400 feet deep and was tested at 3-5 gallons per minute."  (*Id.* ¶ 31.)

Plaintiffs, a married couple, became interested in purchasing the Hay Vega and began discussions with Mr. Wood and Ms. Duncan regarding the purchase.  (*See id.* ¶¶ 3, 23-28, 36.) Plaintiffs hoped to develop the land for residential use and to create substantially more than seven to eleven home sites.  (*Id.* ¶ 47.)  A well producing 3 to 5 gallons per minute could serve approximately seven to eleven homes.  (*Id.* ¶ 46.)  On November 23, 2008, Mr. Wood provided Plaintiffs a copy of a well driller's log for the existing well ("the Well Log"), which stated that the existing well was drilled in 1989 to a depth of 400 feet, cased with PVC pipe to a depth of 200 feet, and estimated to produce between 3 and 5 gallons a minute with all but a minor portion of that water entering the well column from a layer of sandstone located between 175 and 235 feet below the surface.  (*Id.* ¶¶ 32-34.)

On or about May 12, 2009, Plaintiffs entered into an agreement with Ms. Duncan to purchase the Hay Vega on certain terms and conditions.  (*Id.* ¶ 36.)  Under the agreement, Plaintiffs had a general right to terminate the agreement within 90 days after escrow was opened ("the General Feasibility Period") and a right to terminate the agreement within 180 days after escrow was opened if Plaintiffs were unable by drilling one or more wells to establish a supply of groundwater of at least 20 gallons per minute ("the Water Feasibility Period").  (*Id.* ¶¶ 37-38.)  In entering the agreement and in their subsequent attempts to establish an adequate water supply for their planned development, Plaintiffs relied on the information set forth on WWP's website and in the Well Log as a correct description of the existing well.  (*Id.* ¶ 45.)

During the General Feasibility Period, Plaintiffs took numerous steps to determine the feasibility of their planned development, including meeting with representatives about providing electricity and telephone services, retaining a biologist to identify and evaluate areas that might be treated as "waters of the United States," and retaining a person to estimate costs of installing infrastructure improvements on the Hay Vega. (*See id.* ¶¶ 49-58.) Plaintiffs also made numerous efforts to establish an adequate water source, including retaining a company to develop a plan to establish the water source, test-pumping the existing well, and drilling two wells of depths 1,410 feet and 1,020 feet, respectively. (*See id.* ¶¶ 60-63, 67- 94.) On July 22, 2009, after Plaintiffs advised Mr. Wood that Quest Enterprises, Inc., ("Quest") a well drilling and servicing firm retained by Plaintiffs, planned to test pump the existing well on July 23, 2009, Mr. Wood responded, "I have been curious for a long time on what that well will really produce." (*Id.* at 65-68.)

When Quest attempted to lower its pump to a depth of 300 feet or more, it was unsuccessful because there was a blockage below around 128 feet. (*Id.* at ¶¶ 75-76.) Quest determined that, running its pump at around ½ gallon per minute, the pump quickly dewatered the well to the pump inlet. (*Id.* ¶ 78.) The other two wells drilled were also not as productive as Plaintiffs wished, as the first was a dry hole and the second produced only 1-2 gallons per minute. (*See id.* ¶¶ 90, 94-98.)

On or about November 14, 2009, Quest proposed to make another attempt to evaluate the existing well, but due to another emergency, it could not do any further work until after November 26, 2009. (*See id.* ¶¶ 98-102.) On or about November 18, 2009, Mr. Rice told Mr. Wood about the scheduling problem and asked if Ms. Duncan would be willing to extend both the Water Feasibility Period, which was set to expire on November 30, 2009, and the closing date, which was set for February 15, 2010. (*Id.* ¶ 103.) On November 21, 2009, Mr. Wood advised that Ms. Duncan had agreed to extend the Water Feasibility Period until the scheduled closing date but that she would not

3

extend the closing date. (*Id.* ¶ 104.) That same day, Mr. Rice asked Mr. Wood if other potential buyers had emerged and if Ms. Duncan had asked Mr. Wood to begin making efforts to locate alternative buyers. (*Id.* ¶ 105.) Among other things, Mr. Wood told Mr. Rice that there were no other potential buyers who might be influencing Ms. Duncan's thinking and that she had not asked him to resume active marketing of the Hay Vega. (*Id.* ¶ 106.)

On November 23, 2009, Plaintiffs emailed to Mr. Wood and Ms. Duncan a proposed amendment to the purchase agreement, which would have extended the Water Feasibility Period until the scheduled closing date. (*Id.* ¶¶ 109-10.) That same day, Mr. Rice advised Mr. Wood that it was important to sign and deliver the amendment that day or the next, because Plaintiffs would need to get a notice of termination in the mail on November 25, 2009, if they did not have a signed amendment in hand before then. (*See id.* ¶ 111.) On November 24, 2009, Mr. Wood informed Mr. Rice that Ms. Duncan would sign a counterpart to the amendment later that day and that he would email it to Plaintiffs that evening. (*Id.* ¶ 112.) Plaintiffs did not hear further from Mr. Wood or Ms. Duncan on November 24, 2009.

Late on November 24, 2009, Quest informed Mr. Rice that it attempted to drill through the existing well's blockage but determined that the existing well was only 130 feet below the surface. (*See id.* ¶¶ 114-15.) The next day, Mr. Rice unsuccessfully tried to contact Mr. Wood to determine if Ms. Duncan signed the amendment. (*See id.* ¶¶ 116-18.) Given the failure to extend the Water Feasibility Period and in light of the information about the existing well, later in the day on November 25, 2009, Mr. Rice sent Mr. Wood and Ms. Duncan an email with a notice terminating the purchase agreement. (*See id.* ¶ 118.)

Plaintiffs then began an immediate effort to renegotiate. (*See id.* ¶¶ 123-26.) On November 30, 2009, Plaintiffs emailed Mr. Wood a draft of a new offer to purchase the Hay Vega. (*Id.* ¶ 127.)

That same day, Mr. Wood informed Mr. Rice that he and Ms. Duncan were parties to a third party agreement under the terms of which they could not discuss the Hay Vega with Plaintiffs and that was conditional upon Plaintiffs terminating the purchase agreement, indicating that they entered the third party agreement while the purchase agreement was still in effect.  (*See id.* ¶¶ 128-35.) Plaintiffs would not have terminated the purchase agreement if they had known at the time that Ms. Duncan had already entered into an agreement with another buyer.  (*Id.* ¶ 153.)

Plaintiffs subsequently brought suit against Ms. Duncan, Mr. Wood, WWP, and Mrs. Wood. The Complaint asserts six counts:  breach of a broker's duty of reasonable care and competence against all defendants (Counts I and II), fraud against all defendants (Counts III and IV), breach of contract against Ms. Duncan (Count V), and breach of the implied covenant of good faith and fair dealing against Ms. Duncan (Count VI).  Plaintiffs contend that they were misled regarding the existing well and that many of their significant expenditures were undertaken in reliance on false information about the depth of the well and its capacity.  Plaintiffs also assert that Ms. Duncan entered into the third party agreement while the original purchase agreement was still in effect and that Ms. Duncan or Mr. Wood were under an obligation to disclose the potential buyer.  Plaintiffs contend that Mr. Wood committed fraud when, instead of disclosing the third party upon their request, he indicated that there were no other potential buyers who might be influencing Ms. Duncan's thinking.  Finally, Plaintiffs contend that Ms. Duncan violated the actual terms of the agreement and an implied covenant of good faith and fair dealing based upon the above controversies as well as her refusal to sign and deliver the amendment that would have extended the due diligence period after informing Plaintiffs that she would.

Defendants each filed Answers in response to the Complaint.  Mr. Wood and WWP filed a joint Answer (Doc. 14) and Mrs. Wood filed a separate Answer (Doc. 15), but both are virtually

identical on the matters relevant to the motions at hand.  For ease of reference, the Court will refer

to both Answers as "the WWP/Woods' Answer."  Ms. Duncan also filed a separate Answer (Doc.

17).  On April 1, 2010, Plaintiffs moved to strike pursuant to Rule 12(f) two paragraphs of Ms.

Duncan's Answer and forty-two paragraphs of the WWP/Woods' Answer on the grounds that they

violate Rule 8(b).  (*See* Pls.' Mot. to Strike (Doc. 18) at 11.)  On May 21, 2010, Mrs. Wood filed

a motion to dismiss (Doc. 38) all claims against her.  The Court will consider each motion in turn.

## II.    PLAINTIFFS' MOTION TO STRIKE

In their Motion to Strike, Plaintiffs identify two types of responses, occurring throughout the

Answers, that they argue should be stricken as a result of technical inadequacy or bad faith:

First, Plaintiffs criticize those portions of the Answers where, in response to paragraphs in

the Complaint that refer to or even quote actual documents such as emails or the Purchase

Agreement, Defendants have given responses like "those paragraphs set forth an incomplete

paraphrasing of the contents of the document referred to and that the best evidence of what each of

those documents says is the document itself, and to the extent that the allegations differ or are

incomplete, they are denied" (*e.g.*, Ms. Duncan's Answer (Doc. 17) ¶ 9), or Defendants have simply

stated, without any explicit affirmation or denial, that "the best evidence of what the referenced

document says is the document itself" (*e.g.*, WWP/Woods' Answer (Docs. 14 & 15) ¶ 42).  Plaintiffs

contend that Rule 8(b) does not permit these sorts of answers.

Second, Plaintiffs argue that many of the answers in which Defendants have claimed

insufficient information per Rule 8(b)(5) were made in bad faith, because Defendants "clearly had,

or with minimal effort could have obtained, information sufficient to form a belief as to whether an

allegation is true or false." (Pls.' Mot. to Strike (Doc. 18) at 6.) These include answers where,

instead of admitting to detailed transcriptions of conversations, Defendants have pled insufficient

information, or answers where Defendants have pled insufficient information with regard to the content of specific emails and the website.

### A.      Defendants' Answers do not violate Rule 8(b)

Federal Rule of Civil Procedure 8(b)(1)(B) provides that in responding to a pleading, a party must "admit or deny the allegations asserted against it by an opposing party."  Rule 8(b) allows a party in good faith to deny only part of an allegation, but the party must admit the part that is true and deny the rest.  Fed. R. Civ. P. 8(b)(4).  "A party that lacks knowledge or information sufficient to form a belief about the truth of an allegation must so state, and the statement has the effect of a denial."  Fed. R. Civ. P. 8(b)(5).

### 1.      Defendants' "best evidence" responses do not violate Rule 8(b)

In support of the proposition that Defendants' "best evidence" responses violate Rule 8(b), Plaintiffs cite *Kortum v. Raffles Holding, Ltd.*, 2002 WL 31455994 (E.D. Ill. 2002) (unpublished opinion), and *Chicago Dist. Council of Carpenters Pension Fund v. Balmoral Racing Club, Inc.*, 2000 WL 876921 (N.D. Ill. 2000).  In both *Kortum* and *Balmoral*, the respective courts explained that responding in an answer that documents "speak for themselves" and like responses do not comply with Rule 8(b), because they do not admit the allegation, deny the allegation, or state a lack of information sufficient to form a belief as to its truth, the only three pleading options available under Rule 8(b).  *See Kortum*, 2002 WL 31455994 at *4; *Balmoral*, 2000 WL 876921 at *1-2.  The *Balmoral* court struck such answers.  *Balmoral*, 2000 WL 876921 at *1-2.  The *Kortum* court did not strike Defendants' answers; it merely used Defendants' violation of Rule 8(b) as a reason to allow the plaintiff to amend the complaint.  *Kortum*, 2002 WL 31455994 at *4-5.

There are, however, significant distinctions between the offending pleadings in *Kortum* and *Balmoral* and Defendants' Answers.  In contrast to the pleadings in *Kortum* and *Balmoral*,

7

Defendants in most instances actually do admit or deny the allegations. (*See, e.g.*, Def. Duncan's Answer (Doc. 17) ¶ 12 ("Duncan *admits* that she sent an email . . . as alleged, but *denies* that the quoted language is a complete statement of the contents of the email, which speaks for itself.") (emphasis added).) Even the most skeletal responses—responses, for example, that do not even go to the trouble of saying "and to the extent the allegations differ or are incomplete, they are denied"—meet the standard set by Rule 8(b). For example, paragraph 42 of the WWP/Woods' Answer (Docs. 14 & 15) states, in response to paragraph 42 of the Complaint, that "the best evidence of what the referenced documents says is the document itself." If this type of response appears ambiguously situated between an admission and a denial, it is because the scope of the original paragraph in the Complaint is ambiguous. In paragraph 42 of the Complaint, Plaintiffs did not quote directly from the purchase agreement; rather, Plaintiffs paraphrased the purchase agreement. It is clear from Defendants' Answer as a whole that Defendants admit to the existence of a purchase agreement and that, to the extent Plaintiffs' paraphrasing has misquoted that agreement, Defendants deny the allegation.

Consequently, when Defendants refer back to the documents themselves, such "best evidence" responses must be evaluated against the Complaint they address. Without referencing the documents, the Answers would replicate the excessive, and at often times needless, detail of the Complaint. Plaintiffs respond that Defendants, "[i]n admitting these allegations, . . . would not be admitting that any quoted or described material is accurate; instead, [they] would be admitting only that the quoted or described material is in fact in the pertinent document." (Pls.' Reply to Def. Duncan's Resp. (Doc. 35) at 6.) Yet Defendants have essentially done just that by such answers as "the best evidence of what each of those documents says is the document itself, and to the extent the allegations differ or are incomplete, they are denied," (Def. Duncan's Answer ¶ 9), the implication

being that, if the allegations in question accurately and sufficiently represent the documents quoted, then they are affirmed (in addition to representing a "pertinent" document), and otherwise they are denied.  (*See* Resp. (Doc. 22) at 5 ("[I]n each case, these Defendants' response operates *as an admission* that Plaintiffs' transcription or interpretation of the contents of each document is accurate, to the extent to which the same does not deviate from the contents of the document referred to.").) These types of responses satisfy the "admit or deny" requirement of Rule 8(b)(1)(B).  Furthermore, the Court cannot conclude that such answers were made in bad faith, especially where Plaintiffs have access to the documents referred to in Defendants' Answers and there is no evidence of underhanded "hide-the-ball" tactics.  The Court will therefore not strike any of the "best evidence" responses.

### 2.    Defendants' responses declaring insufficient information do not violate Rule 8(b)(5)

In response to multiple paragraphs of Plaintiffs' Complaint, Defendants plead insufficient information, and therefore deny them.  Though usually legitimate per Rule 8(b)(5), Plaintiffs contend that many of Defendants' "insufficient information" responses were made in bad faith because Defendants had, or with minimal effort could have obtained, information sufficient to form a belief as to the allegation's truth.  Despite an exhaustive analysis in their Motion and reply briefs, however, this contention is without merit.

First, Plaintiffs argue that Ms. Duncan should have admitted or directly denied those portions of the Complaint explicating the content of the website (*see* Compl. ¶¶ 14, 29, 30, 31), in spite of her personal lack of knowledge at the relevant times and the difficulty of dating the website, because it was still up at the time the Complaint was filed and she presumably could have obtained copies of the pertinent materials from WWP, who admitted the paragraphs in question in their own

Answers.  Here, Plaintiffs either ignore the crucial fact that the relevant time is the initial time during which they allegedly began to rely on the website (long before there was even a lawsuit), *or* they harbor the unreasonable expectation that Defendants perform significant discovery before answering and/or parrot their co-defendants.  The Court cannot conclude as a matter of law that contacting a broker's webmaster regarding historical, electronic records, which may not even exist, is a minor, reasonable endeavor that should not better be left for discovery.

Second, Plaintiffs argue that Ms. Duncan should have admitted or directly denied an allegation involving an email sent to her by Mr. Wood, despite Ms. Duncan's assertion in her response that, after "combing through many hundreds of e-mails saved in [her] e-mail accounts," she was unable to locate the specific document (Def. Duncan's Resp. (Doc. 20) at 8).  Plaintiffs' argument that Ms. Duncan should have "reached out" to Mr. Wood or Plaintiffs misconstrues the purpose of the pleadings as distinguished from discovery.  Though purportedly in the possession of a co-defendant, the email may still be outside of Ms. Duncan's personal knowledge, and thus her answer saying as much does not necessarily amount to bad faith.

Third, Plaintiffs argue that Mr. Wood should have admitted or directly denied a host of allegations involving things that he said or were told to him.  They point out that only two of the paragraphs cited were direct quotations.  Although many of the paragraphs were paraphrased, many of those are quite detailed, involving strings of assertions allegedly made by either side. (*See, e.g.*, Compl. ¶¶ 106, 107.)  It therefore does not indict Mr. Wood's honesty when he claims, in effect, that he was unable to recall the conversations or the specific details alleged.  Plaintiffs counter that Rule 8(b)(4) requires an answering party to admit any part of an allegation which the answering party believes to be true.  Yet without condoning the use of blanket assertions of insufficient information, the Court cannot conclude that Mr. Wood's responses are disingenuous.  Indeed, the closest

Plaintiffs come to proving bad faith involves a comparison between Mr. Wood's response to paragraph 106 in the Complaint, where he pleads lack of knowledge and information, with the Joint Status Report and Provisional Discovery Plan, stating that Mr. Wood will submit testimony on similar material.  Aside from demonstrating that this Motion is unnecessary when set against the inevitable fruits of discovery, the averments are materially different: one involves the alleged statement by Mr. Wood that other buyers were not "influencing Ms. Duncan's thinking" (Compl. ¶ 106(a)), whereas Mr. Wood's expected testimony will include the claim that he had not *solicited* any other buyers (*see* Joint Status Report (Doc. 27) at 18).  The distinction is not simply academic, as it goes to the heart of the alleged misrepresentation made by Mr. Wood, and certainty with regard to the latter statement can plausibly coexist with uncertainty regarding the former.

Fourth, Plaintiffs argue that the Woods and WWP should have admitted or directly denied paragraph twelve of the Complaint, which states that the Hay Vega has been in Ms. Duncan's family since 1910, because this information was available on the website, which the Woods admitted was used to advertise the property between November 2008 and December 2009.  The Woods and WWP, however, need not acquiesce to the truth or accuracy of representations simply because they agree that such representations were made on a website or a flier, especially where they may not have personal knowledge of that fact other than through hearsay.

Fifth, Plaintiffs argue that the Woods and WWP should have admitted or directly denied an allegation in the Complaint that quoted an email sent to Plaintiffs by Ms. Duncan, reasoning from their own copy that the Woods were not only included as recipients but also responded with an email of their own.  It is reasonable to conclude, however, that the Woods were simply unable to dig up an email.  Moreover, the content of the email is at best tangential to the Purchase Agreement and the suit.  Plaintiffs also criticize them for failing to obtain the email from their co-defendant, but this

11

omission is not grounds to strike the response.  The Court simply cannot conclude that the Woods and WWP have answered in bad faith.

Finally, Plaintiffs argue that the Woods and WWP violated Rule 8(b) when they gave an ambiguous answer to the allegation in paragraph 20 of the Complaint that all the actions and omissions described in the complaint were within the scope of an agency relationship.  WWP's and the Woods' Answer states: "Wild West admits the allegations made in Paragraph 20 that Randy Wood and Wild West Properties, LLC were acting as Helen Duncan's agents, with authority to do so, during the subject transaction, but deny the remaining allegations made in that paragraph."  This answer merely takes issue with the numerous, unspecified "acts and omissions" incorporated by reference in Paragraph 20 of the Complaint.  Denying that Mr. Wood and WWP were acting as agents for *all* the myriad acts and omissions while simultaneously admitting that an agency relationship exists is not ambiguous:  One can act as an agent at times while not at others, depending on the scope of the agency relationship. Plaintiffs' expectation that the Woods return to each and every paragraph in the Complaint describing an act or omission and clarify whether an agency relationship was present in each case is unreasonable and, furthermore, superfluous insofar as the scope of the agency relationship may be gleaned from the specific responses to those paragraphs read in conjunction with whatever document and/or agreement created the relationship, which may be obtained in discovery, the rightful place for such a fact-heavy investigation.

### 3.     Rule 8(b)(6)'s remedy should not be applied

Rule 8(b)(6) provides a remedy for failing to adequately deny an allegation: "An allegation–other than one relating to the amount of damages–is admitted if a responsive pleading is required and the allegation is not denied."  Because this Court has determined that Defendants sufficiently admitted or denied all allegations in the complaint, Plaintiffs are not entitled to Rule

8(b)(6)'s remedy.

### B.   Defendants' Answers should not be stricken under Rule 12(f)

Plaintiffs argue that Defendants' violations of Rule 8(b) warrant dismissal under Rule 12(f). Under Rule 12(f), a court may "strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f). However, because a motion to strike is often sought as a "dilatory or harassing tactic," such motions are viewed with disfavor by the federal courts and are infrequently granted. 5 Wright & Miller, *Federal Practice and Procedure: Civil* §§ 1380-81 (2004).  Despite a court's broad discretion to grant a Rule 12(f) motion or strike matters on its own accord, "striking a party's pleadings is an extreme measure," *Stanbury Law Firm, P.A. v. IRS*, 221 F.3d 1059, 1063 (8th Cir. 2000), and one to which a court should only resort when it is required to serve the purposes of justice, *E.E.O.C. v. B.C.I. Bottling Co.*, 02cv1644 JB/RHS, at 3 (D.N.M. Aug. 28, 2008), *rev'd on other grounds by* 450 F.3d 2006 (10th Cir. 2006) (unpublished).

As previously discussed, the Court has concluded that the Answers did not violate Rule 8(b), and therefore, Plaintiffs' argument fails.  Moreover, Rule 12(f), by its terms, does not appear to apply because Plaintiffs are not arguing that Defendants have asserted an insufficient defense or redundant, impertinent, or scandalous matter.  Finally, even if some of Defendants' responses were technically inadequate under Rule 8(b), Plaintiffs have not shown that the harsh sanction of striking portions of the Answers should be applied in this case where Defendants' Answers, as a whole, provide Plaintiffs reasonable notice of the allegations that they intend to place in issue.

Moreover, applying the Rule 12(f) sanction here would be inequitable, because Plaintiffs already have most if not all of the emails, reports, and like documents in their personal possession. Hence, Defendants' allegedly deficient "best evidence" answers do not amount to the sort of hide-

the-ball tactics a motion to strike is properly used to combat.  Far from suffering from a dearth of information, Plaintiffs' Motion as well as their Complaint demonstrate that they are already quite versed in the facts of the case, even before the Defendants have responded to their *first* set of interrogatories.  Defendants' Answers represent what appears to be an honest attempt at responding to allegations *that plead evidence*, without prematurely conceding the accuracy or exact content of that evidence.

Nor have Plaintiffs been forced to bear any improper expenditures of time, expense, and complexity beyond the inherent costs of making the Motion to Strike.  Ms. Duncan, in her response to the Motion, argues convincingly that "[i]nstead of filing an eleven page motion that required a substantial response from Duncan, Plaintiffs, with little or no effort, could otherwise have established the authenticity of the documents cited in the allegations that Duncan did not admit," via their own declarations, and that "any discovery could have been prepared in a fraction of the time . . . ." (Duncan's Resp. to Mot. (Doc. 20) at 3.)  Given that Plaintiffs are already in possession of most of the documents, the supposed defects in the Answers can be cured through the various vehicles of discovery.  More to the point, many of the allegations in the complaint are better characterized as evidence and are unnecessary under either Rule 8 or Rule 9(b).  Hence discovery is not merely a convenient alternative to evidence-laden answers but is rather the particular province of the kind of factual verification (and investigation) required by such "allegations."

### C.  Conclusion

Because Plaintiffs have failed to demonstrate that Defendants' Answers violate Rule 8(b), their Motion must be denied.  Defendants' responses constitute a reasonable effort to respond to an exhaustively detailed Complaint.  Even if some of the responses succumb to the defects Plaintiffs have so painstakingly documented, the technical inadequacy does not justify striking the pleadings

14

where the Court cannot conclude that Defendants' responses were made in bad faith, Defendants' Answers, as a whole, have provided Plaintiffs with reasonable notice of the issues they intend to place at issue, and the various vehicles of discovery can cure any prejudice.

## III.   DEFENDANT MARGARET WOOD'S MOTION TO DISMISS

### A.   Background to the Motion

Mrs. Wood is not personally implicated in any of the claims currently pending—a fact which Plaintiffs concede.  (*See* Pls.' Resp. to Mot. (Doc. 41) at 2 ("the Complaint does not ask for a judgment to be entered against Mrs. Wood personally").)  Of the four paragraphs in the Complaint that even mention her, two of them are conclusory assertions concerning a point of law.  (*See* Compl. ¶ 164 ("Mr. and Mrs. Wood's marital community is responsible for the acts of Mr. Wood described in this Count One.") & ¶ 176 ("Mr. and Mrs. Wood's marital community is responsible for the acts of Mr. Wood described in this Count Three.").)  The other two paragraphs merely establish that she is Mr. Wood's wife (*see* Compl. ¶ 3) and that, along with her husband, she hosted a dinner in Albuquerque at which they introduced Plaintiffs to Ms. Duncan (*see* Compl. ¶ 25). In effect, Plaintiffs have named Mrs. Wood as a defendant merely to establish that, in the event of a judgment against Mr. Wood, Mr. and Mrs. Wood's marital community is liable in satisfying that judgment. (*See* Compl. ¶¶ 164, 176.)  Accordingly, Mrs. Wood has requested that the Court dismiss all of Plaintiffs' claims against her and drop her as a party pursuant to Federal Rules of Civil Procedure 12(b)(6), 20(b), and 21.  In response, Plaintiffs argue that Mrs. Wood is a permissible party per Rule 20, and that joinder is required per Rule 19.

### B.   Discussion

#### 1.   Joinder of Mrs. Wood is not required under Rule 19

Generally speaking, persons should be joined when their absence will either materially

15

reduce the likelihood that the court can provide justice for those already parties or be detrimental to the non-parties themselves. *See* Fed. R. Civ. P. 19; *see also Republic of Phil. v. Pimentel*, 553 U.S. 851, 128 S.Ct. 2180, 2188-89 (2008).  Rule 19(a)(1) states in relevant part:

> A person . . . must be joined as a party if:
>
> (A)    in that person's absence, the court cannot accord complete relief among existing parties; or
>
> (B)    that person claims an interest relating to the subject of the action and is so situated that disposing of the action in the person's absence may:
> > (i)    as a practical matter impair or impede the person's ability to protect the interest; or
> > (ii)    leave an existing party subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations because of the interest.

Plaintiffs have offered three reasons for why Mrs. Wood is a required party that track the three disjunctive prongs of Rules 19(a)(1)(A), 19(a)(1)(B)(i), and 19(a)(1)(B)(ii), respectively. First, Plaintiffs argue pursuant to Rule 19(a)(1)(A) that the Court cannot accord complete relief among existing parties in Mrs. Wood's absence because, "[w]ithout Mrs. Wood as a party, any judgment of this Court that Mr. Wood's wrongful conduct gave rise to a community debt might not be binding on Mrs. Wood."  (Pls.' Resp. to Mot. to Dismiss (Doc. 41) at 3.)  Second, Plaintiffs argue pursuant to Rule 19(a)(1)(B)(i) that Mrs. Wood claims an interest relating to the subject of the action and that her absence would impair or impede her ability to protect that interest.  (*Id.*)  Finally, Plaintiffs argue pursuant to Rule 19(a)(1)(B)(ii) that, in Mrs. Wood's absence, "there is also a risk that the remaining parties may be subjected to inconsistent rulings" insofar as a determination in the present suit that Mr. Wood's liability results in a community debt might conflict with a hypothetical, subsequent decision in which only Mr. Wood's separate assets are deemed available. (*Id.* at 3-4.)  All of these arguments are without merit.

16

### a.      Rule 19(a)(1)(A)

Plaintiffs' contention that, in Mrs. Wood's absence, any judgment of this Court that Mr. Wood's wrongful conduct gave rise to a community debt might not be binding on Mrs. Wood contradicts relevant New Mexico law.  Under New Mexico law, a community debt may be incurred by one spouse. *See* N.M. Stat. Ann. § 40-3-9 (2010) (defining community debt as "a debt incurred by *either* or both spouses during marriage which is not a separate debt") (emphasis added); *Huntington Nat'l Bank v. Sproul*, 116 N.M. 254, 258, 861 P.2d 935, 939 (1993) ("[O]ne spouse can incur a community debt without the participation of the other spouse.").  Additionally, section 40-3-11 of the New Mexico Code states that "[c]ommunity debts shall be satisfied first from all community property and all property in which each spouse owns an undivided equal interest as a joint tenant or tenant in common." N.M. Stat. Ann. § 40-3-11 (2010). Consequently, Mrs. Wood's absence in the original action would not foreclose subsequent, ancillary litigation on the issue (*e.g.*, in a collection action). *See, e.g.*, *Dell v. Heard*, 532 F.2d 1330, 1334 (10th Cir. 1976) (recognizing that issue of whether a tort judgment against one spouse constituted a community or separate debt could be determined when suit was brought to satisfy judgment); *McDonald v. Senn*, 53 N.M. 198, 200-01 (1949) (per curiam) (permitting determination of whether personal tort judgment against one spouse constituted a community or separate obligation to be made when suit was brought to foreclose on judgment lien on community real estate); *see also Sproul*, 116 N.M. at 266 ("Nothing in Section 40-3-13(A), however, or related community property statutes, prohibits a creditor from adjudicating the issue of whether a debt is a separate or community debt at the time suit is brought to foreclose on a judgment lien.").  In short, even if Mrs. Wood is a required party in a post-judgment proceeding such as a garnishment action, *cf. Jemko, Inc. v. Liaghat*, 106 N.M. 50, 53, 738 P.2d 922, 926 (Ct. App. 1987), she need not be joined in the initial action determining her husband's

17

liability, as failure to do so would not prevent the tribunal in charge of the ancillary proceeding from determining whether Mr. Wood's debt is communal or separate.

Plaintiffs imply that such ancillary proceedings would be inefficient or even duplicative, but "[p]roperly interpreted, [Rule 19] is not invoked simply because some absentee may cause future litigation." *Begay v. P.S.C.*, 2010 U.S. Dist. LEXIS 41362, at *32 (D.N.M. Apr. 15, 2010) (Browning, J.) (quoting 4 J. Moore & R. Freer, *Moore's Federal Practice* § 19.03[2][b], at 19-39 (3d ed. 2009)). Given that joint tortfeasors are not even required parties under Rule 19,[2] parties with merely an interest in property subject to a potential judgment are likewise not subject to Rule 19.[3]

### b.       Rule 19(a)(1)(B)(i)

The second argument Plaintiffs advance in support of mandatory joinder is that Mrs. Wood "claims an interest relating to the subject of the action" pursuant to Rule 19(a)(1)(B)(i) because she would be affected by any judgment of communal liability.  It is true that the scope of "interest" as understood by Rule 19 extends beyond presently cognizable claims. *See, e.g.*, *Davis v. United States*, 192 F.3d 951, 958 (10th Cir. 1999) ("Rule 19 . . . does not require the absent party to actually possess an interest; it only requires the movant to show that the absent party 'claims an interest

---

[2]*See Resolution Trust Corp. v. Stone*, 998 F.2d 1534, 1549-50 (10th Cir. 1993) (citing advisory committee's note) (noting that Rule 19 as amended does not vary the "settled authorities" holding that a joint tortfeasor is merely a permissive party governed by Rule 20).

[3]In support of their argument, Plaintiffs cite *Weimer v. Maricopa County Cmty. Coll. Dist.*, 184 F.R.D. 309 (D. Ariz. 1998), in which the court held that, because of the potential for fee-shifting, and because *under Arizona property law* "a judgment against one spouse does not bind the community," *id.* at 310, joinder of a plaintiff's spouse was required despite her attenuated relationship to the claims brought by her husband. *Weimer* applies Arizona law. Both parties agree that New Mexico law applies here. (*See, e.g.*, Pls.' Resp. (Doc. 41) at 3.) Despite what appears to be a contrary rule in Arizona, in New Mexico, a judgment against one spouse can bind the community. Therefore, joinder is not required under New Mexico property law and *Weimer* is accordingly distinguishable.

relating to the subject of the action.'"). Even so, Plaintiffs' interpretation of Rule 19(a)(1)(B)(i) is improperly broad. If Plaintiffs are correct, then New Mexico courts, or federal courts interpreting New Mexico property law, would be required to join non-party spouses whenever there is a potential for a community debt. That this simply is not so can be seen from the examples of *Dell* and *McDonald*, *supra*. Beyond a general economic interest in the community property she shares with her husband, Mrs. Wood is completely unrelated to the present suit – she had no involvement in the underlying real estate transaction or the fraud alleged against her husband, WWP, and Mrs. Duncan. Consequently, she does not have an "interest" in the present action for the purposes of Rule 19.

### c.        Rule 19(a)(1)(B)(ii)

The third and final argument Plaintiffs advance in support of mandatory joinder involves a hypothetical scenario in which, owing to Mrs. Wood's absence in the original suit, a subsequent executory action produces a different, inconsistent result from the one reached by this Court. Even assuming this Court were willing to pass on the question of whether Mr. Wood's judgment debt is communal, Plaintiffs have offered no explanation as to how, in a subsequent tribunal such as a state court presiding over a collection action, the Woods could relitigate the issue. In any event, Plaintiffs' hypothetical proves *at most* that the Court should defer on the community property issue, not that failure to join Mrs. Wood subjects the remaining parties to a "substantial risk" of "inconsistent obligations." Fed. R. Civ. P. 19(a)(1)(B)(ii). Therefore, Plaintiffs' argument that joinder is required under Rule 19(a)(1)(B)(ii) is without merit.

### 2.        Dismissal is appropriate pursuant to Rule 12(b)(6)

Rule 12(b)(6) allows a court to dismiss a complaint for failure to state a claim on which relief can be granted. To survive a Rule 12(b)(6) motion, a complaint must "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim has "facial

plausibility," in turn, "when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009) (citing *Twombly*, 550 U.S. at 556); *see also Hall v. Witteman*, 584 F.3d 859, 864 (10th Cir. 2009) (quoting *Iqbal*, 129 S.Ct. at 1949); *Gallagher v. Shelton*, 587 F.3d 1063, 1068 (10th Cir. 2009) (same). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 129 S.Ct. at 1949. In determining whether Plaintiffs have "nudged their claims across the line from conceivable to plausible," *Twombly*, 550 U.S. at 570, the Court must accept as true all well-pleaded factual allegations in the Complaint, *id.* at 555-56, although such deference is "inapplicable to legal conclusions," and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice," *Iqbal*, 129 S.Ct. at 1949 (citing *Twombly*, 550 U.S. at 555).

Plaintiffs' *pro se* status entitles them to a liberal construction of their pleadings. *See Hall*, 584 F.3d at 864 (citing *Van Deelen v. Johnson*, 497 F.3d 1151, 1153 n.1 (10th Cir. 2007)). Nonetheless, *pro se* litigants must "follow the same rules of procedure that govern other litigants," *Garrett v. Selby Connor Maddux & Janner*, 425 F.3d 836, 840 (10th Cir. 2005) (brackets and internal quotation marks omitted), and in particular the factual requirements of Rule 12(b)(6) as understood by Rules 8(a)(2) and 9(b), *see, e.g.*, *United States ex rel. Baker v. Cmty. Health Syss.*, 2010 U.S. Dist. LEXIS 51545 (D.N.M. Mar. 19, 2010).

As indicated above, none of the allegations lodged in the Complaint come close to stating a claim against Mrs. Wood. Two of them amount to a legal conclusion, one offers necessary but, by itself, insufficient information in support of that conclusion (i.e. Mr. and Mrs. Wood are married), and the remaining allegation simply relates that, on one occasion prior to any of the alleged fraudulent misrepresentations or derelictions of duty, she co-hosted a dinner party in Plaintiffs'

20

honor.   None of the allegations contained in the Complaint link her to the alleged misrepresentations, contractual obligations, or duty of good-faith and fair dealing contained therein, and no injury is alleged to have occurred as a result of her actions or omissions. Put simply, Plaintiffs do not allege *any* wrongdoing on her behalf, "liberal construction" notwithstanding.

Admittedly, Plaintiffs' singular motivation for naming Mrs. Wood as a party is to ensure that the Woods' community property may be used to satisfy a judgment against Mr. Wood. Yet even if this were true, Plaintiffs have at most asserted a claim *against Mrs. Wood's property* but not Mrs. Wood herself.  This may give Mrs. Wood a right to *intervene* pursuant to Rule 24, and joinder may even be theoretically permissible pursuant to Rule 20, *but see* discussion *infra*, but neither of these possibilities counteract Mrs. Wood's request in the present Motion that all of the claims be dismissed as they relate to her, effectively dropping her as a party. Indeed, Mrs. Wood may even be deemed a required party in a subsequent, executory proceeding such as a garnishment action, *see supra*, but the potential for mandatory joinder in a subsequent action is not a transferable justification as to how a cause of action asserted against a spouse's community property becomes a cause of action against the spouse herself.

The parties rely on a case from the Tenth Circuit, *Dell v. Heard*, 532 F.2d 1330 (10th Cir. 1976), and a case from the Court of Appeals of New Mexico, *Naranjo v. Paull*, 111 N.M. 165 (Ct. App. 1990), in support of their respective positions.  *Dell* involved a plaintiff who, after successfully suing a woman for negligently causing a car accident, brought a subsequent suit against the husband to collect the unpaid balance of his wife's community debt and also to collect actual damages against him through the "family purpose doctrine," a common law rule which allows auto-accident plaintiffs to assert the same claims against the tortfeasor's spouse.  *See Dell*, 532 F.2d at 1331-32.  *Naranjo* involved a securities action in which two spouses, *both* directors of the corporation in question, were

originally sued for their individual contributions to a fraudulent sale of securities, during the course of which the counts were dismissed against the wife/vice-president.  *See Naranjo*, 111 N.M. at 166-67.  Plaintiffs rightly point out the fact that *Naranjo* specifically rejects an implication, potentially contained in *Dell*, that under New Mexico law, "determination of whether a tort was a community tort should be deferred until an attempt is made to execute on property for purposes of collecting a judgment." *Naranjo*, 111 N.M. at 177 (rejecting this reading of *Dell*—though not the proposition that, in most cases, the determination *can* be deferred).  Hence it would seem that, in certain circumstances, a spouse may continue as a named defendant, despite the absence of any claims against her personally.  Those circumstances, however, are importantly distinguishable from the present situation.

As indicated by the respective facts of each case, both *Naranjo* as well as *Dell* concern situations in which the putative "innocent" spouse was originally joined, or could have been joined, for reasons beyond a mere community debt.  In other words, there was, or could have been, a specific cause of action asserted against the "innocent" spouse in addition to the community property claim, at least at the time of the original suit's commencement. In *Naranjo* the independent cause of action was securities fraud, and in *Dell*, it was vicarious liability through the "family purpose doctrine."  Therefore, when the Court of Appeals of New Mexico observes in *Naranjo* that it "see[s] no reason, however, why the same court that hears the tort case could not concurrently decide whether the tort was a community tort," it restricts this observation to instances where "both spouses are defendants" in the sense that each spouse is *personally* subject to one or more cognizable claims.  *See Naranjo*, 111 N.M. at 177.  Otherwise, the court would appear to contradict itself when it claims immediately beforehand that it "agree[s] with the Tenth Circuit Court of Appeals that it is inappropriate to enter a judgment against one spouse solely because the other spouse has committed

a community tort. Such a judgment could readily create confusion, since the judgment ordinarily could not be executed against the separate property of the spouse who was not the tortfeasor." *Id.*(citing *Dell*).

In light of situations such as *Naranjo*, where substantive claims against both spouses initially exist, it is understandable that joinder continue, to allow a court to resolve the community property issue in the same adjudication. That scenario, however, is not mirrored in the present case. Nor is the basic, dispositive fact that the plaintiffs in *Dell* and *Naranjo* asserted, or could have asserted, claims against the "innocent" spouses. Simply put, a claim against the Woods' community property does not cure the lack of any claims directed against Mrs. Wood personally for the purposes of Rule 12(b)(6). It is thus only appropriate that the claims against her be dismissed and that she be dismissed as a party.

### 3.    Dismissal is also warranted under Rules 20(b) and 21

As an alternate ground for dismissal, Mrs. Wood argues that the Court should drop her as a party pursuant to Rules 20(b) and 21. Rule 21, which allows a Court on motion or on its own to drop a party or sever the claims against that party in favor of separate trials, *see, e.g.*, *Rice v. Sunrise Express, Inc.*, 209 F.3d 1008, 1016 (7th Cir. 2000); *Old Colony Ventures I, Inc. v. S.M.W.N.P.F. Holdings, Inc.*, 918 F. Supp. 343 (D. Kan. 1996), provides the remedy for misjoinder and in general any other relief required by Rules 19 and 20.  Rule 20(b) allows a court to "issue orders—including an order for separate trials—to protect a party against embarrassment, delay, expense, or other prejudice that arises from including a person against whom the party asserts no claim and who asserts no claim against the party." Fed. R. Civ. P. 20(b). Both rules are relevant to the present situation, as Plaintiffs have asserted no claim against Mrs. Wood (and vice versa). Maintaining her

as a party would subject her to considerable expense (potentially unique from that of her husband because she is allegedly uninsured (Mot. to Dismiss 5)) and it has already been shown that her dismissal would not preclude a subsequent action in which Plaintiffs could litigate the community property issue. Hence the equitable considerations behind Rules 20(b) and 21 compel that Mrs. Wood be dismissed.

**IT IS THEREFORE ORDERED** that:

1.      Plaintiffs' Motion to Strike Portions of Answers and, in the Alternative, Plaintiffs Request that the Court Consider Striking Portions of Answers on its Own (**Doc. 18**) is **DENIED**.

2.      Defendant Margaret Wood's Motion to Dismiss Claims Against Defendant Margaret Wood (**Doc. 38**) is **GRANTED** and the claims against her are **DISMISSED WITH PREJUDICE**.

_____

SENIOR UNITED STATES DISTRICT JUDGE

24